ALBEE's CASE.

Knox.        Opinion April 22, 1929.

*Tascus Atwood*, for plaintiff.
*Hinckley, Hinckley & Shesong*, for defendant.

Sitting: Wilson, C. J., Dunn, Sturgis, Barnes, Farrington, JJ.
Pattangall, J., non-concurring.

Dunn, J.    On November 15, 1927, John Henry Albee, the workman of that name, sustained industrial injury at Thomaston. He was killed instantly. His widow claimed compensation. The in-

surance carrier filed an opposing answer. Upon hearing, the chairman of the Industrial Accident Commission denied compensation, and dismissed the claimant's petition. Such action was on the ground that, conceding all other points proved, claimant was not the statutory dependent of her husband at the time of his injury; her living apart from him having been without justifiable cause, and he not having deserted her. From the compensatory decree, this appeal is prosecuted. The appeal presents for decision whether, as a matter of law, the claimant was dependent on her husband for support.

In reference to the situation the Workmen's Compensation Act (Laws 1919, c. 238) provides:

A wife (shall be conclusively presumed to be wholly dependent for support) upon a husband * * * from whom she was living apart for a justifiable cause, or because he had deserted her.

Sec. 1, VIII (a).

Conclusive presumptions are not really presumptions at all. They are merely rules of law declaring a particular fact to be true under particular circumstances. The Legislature establishes that in the case specified the nonexistence of the fact presumed is immaterial. *Rush* v. *London etc. Co.*, 166 N. W., 772 (Minn.).

There was testimony justifying the trier to find these material facts:

Beginning in 1896, husband and wife lived together over a period of 24 years, both at fault as to "words" with the condition mutually accepted, perhaps, as incidental to marriage.

In 1920 they were boarding at the wife's sister's house in Lewiston. The husband had employment elsewhere as a laborer; the wife was employed in a shoe factory.

The boarding mistress did not like the man's habit of getting up early mornings and talking in his naturally loud voice. She dismissed him. He went down town and hired a room; of this his wife learned. When he came back that same day for his bank book, his wife gave it to him from her custody, voluntarily and without hesitation or question. He took the book to and left it with his stepdaughter in Auburn. Later in the week he returned to the boarding house and removed his personal effects. The wife, though she saw

what her husband was doing, did not seek him or speak to him, nor did he go to or speak to her. That was his last time there.

On leaving the boarding house or afterwards Albee did not ask his wife to live with him. He did not from that time on contribute to her support. He made no effort to see her. On one day, five or six years afterward, husband and wife met on the street when he bowed and may have spoken to her; she was indifferent to his presence. Following this they unexpectedly found themselves in a public dining room on the fair grounds, but neither sought out the other.

Seven years passed. Meanwhile the woman, who throughout had been self-sustaining, and was informed as to her husband's whereabouts, had removed to the home of the daughter who had, or had had, the bank book.

The wife libeled for divorce. The cause alleged is not in the record. Before the case was called the libelee had died.

Claimant testified she might have been ready and willing, before the libeling, to live with her husband, had he requested her to do so, and made provision therefor, and said he was sorry for the names he had called her and indicated that he would do better than he had done, but, notwithstanding this testimony, she apparently made up her mind, recites the commissioner in the opinion he filed, that she no longer needed her husband and chose not to live with him further.

In the absence of fraud, findings of fact in a compensation proceeding, having competent evidence to support them, are conclusive on review. *Mailman's Case,* 118 Me., 172; *Gauthier's Case,* 120 Me., 73.

The separation, certainly, was not, in the first instance, wilful toward the wife; that the boarding house keeper ordered the man to leave negatives any intent to desert at the outset.

What of the conduct of the husband after he had had a reasonable time to establish himself in some other abiding place?

Justifiable cause which will excuse a wife for living apart from her husband ordinarily involves, on the part of the husband with respect to the wife and to her knowledge, conduct inconsistent with the marital relation; not necessarily misconduct or ill treatment of such a character as might entitle her to a divorce from the bonds ·of matrimony, but such, for instance, as could be made, without

turning on the same length of time, the foundation for a judicial separation. See R. S., Chap. 66, Sec. 10. A wife does not live apart from her husband for justifiable cause, if he is not recreant to marital duty. *Newman's Case*, 222 Mass., 563.

Desertion can not be inferred from the mere fact that the parties do not live together. *Freeman* v. *Freeman*, 82 N. J. Eq., 360. It may be that a wife may be passive and yet deserted. On the other hand, she may manifest consent avowedly, or even silently, to her husband's prolonged absence and neglect. Under the Workmen's Compensation Act, though the cause need not be utter, and may become complete sooner than under the divorce statute, yet desertion still means wilful, wrongful, and continued separation with intention to desert, without consent. *Scott's Case*, 117 Me., 436, 440. An absence assented to does not constitute desertion. *Moody* v. *Moody*, 118 Me., 454, 457. A married partner who concurs in the other's staying away, to change slightly Mr. Bishop's phrase, cannot complain of the staying. Bish. M. & D., 1609.

A separation begun by a husband, his wife acquiescing or consenting, does not amount to desertion until some withdrawal of the acquiescence or consent, or the occurrence of some act, or the making of a declaration indicative of a change in attitude. The sitting commissioner, who heard the witnesses, and who saw the witnesses, and, with reference to their credibility and the weight of their testimony, may have gathered that which is not gatherable from the printed record, found that this separation was begun with the wife's consent and continued with her will to the time of the accident.

The reviewing court may not try the facts. That is prohibited. It is for this court to decide if the conclusion drawn by the trier of facts and given efficacy by the decree is within the purview of the law an indefensible inference from the proofs. So to characterize the decision of the chairman of the commission would be inconsistent. It is unimportant that a determination different from that made by the chairman might have been sustainable.

*Appeal dismissed.*
*Decree below affirmed.*