**STATE of Maine**

v.

**Steven WHITE.**

Supreme Judicial Court of Maine.

Submitted on Briefs Feb. 1, 1990.

Decided Feb. 26, 1990.

David W. Crook, Dist. Atty., Augusta, for the State.

Daniel J. Stevens, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Augusta, for defendant.

Before WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

WATHEN, Justice.

Defendant Steven White appeals his convictions for burglary while armed with a firearm, 17–A M.R.S.A. § 401 (1983 & Supp.1989), and theft of a firearm, 17–A M.R.S.A. §§ 353 & 362(2)(B) (1983), after a jury trial in the Superior Court (Kennebec County, *Alexander, J.*). On appeal, defendant alleges that the trial justice abused his discretion by refusing to grant a mistrial based on prosecutorial misconduct and that the trial justice committed obvious error by giving an instruction regarding exclusive possession of recently stolen property. We disagree and affirm the judgment.

Sometime in the early morning hours of February 12, 1988, the Pawn Shop in Waterville was burglarized. The Pawn Shop's owner testified that several items were taken, including a police scanner and a .32 caliber pistol.[1] Police charged defendant, aged 36, and Michael Connolly, aged 20, for the crimes. After pleading guilty to burglary and theft, Connolly was the State's chief witness at defendant's trial. He testified that he and defendant acted together

---

1. The other items were various watches and knives, assorted jewelry, $50.00 worth of coins, a speaker, an equalizer, a portable telephone, and a radio.

in carrying out the burglary and theft of the Pawn Shop.

According to Connolly, he met defendant at the Bob–In, a local bar, in the late evening hours of February 11. After leaving on foot, the two stopped directly across from the Pawn Shop. Defendant loaded a blue .32 caliber pistol and convinced Connolly to assist him in breaking into the store. Connolly broke the front window but was unable to enter as the front door could not be unlocked, even from the inside, without a key. The two then went to Dunkin Donuts.

Approximately fifteen minutes later, defendant and Connolly returned to the Pawn Shop, where Connolly broke a larger window. The two entered through the back door and removed some of the stolen items. They took the merchandise to Connolly's residence and left it on the front porch. Defendant and Connolly returned to the store three times. During the third trip, defendant set off the alarm. The police arrived at the scene as the two were fleeing. Officer John Nelson caught up with Connolly on the roof of a nearby building and brought him to the Waterville police station for questioning. Defendant was not apprehended.

On the basis of their interrogation of Connolly, the police obtained an arrest warrant for defendant. They found him asleep on a couch at Connolly's apartment. Beneath the couch was the stolen police scanner. While incarcerated at the Kennebec County jail, defendant told Connolly that the remaining items were in the basement of Connolly's apartment building. Connolly relayed that information to the police and the items, including the stolen .32 pistol, were recovered.

■ During direct examination of Michael Connolly, the following colloquy took place:

> *Ms. Ames:* After you called to give the location of the stolen property, did you talk to Steven White?
>
> *Connolly:* As in—in the jail?

> *Ms. Ames:* As far as you both (sic) in the jail together?
>
> *Connolly:* Well, there was some talk here and there, but when he found out that I had in fact given a statement, that's when I got to be afraid.
>
> *Ms. Ames:* What was happening?
>
> *Connolly:* He was threatening me. "I'll kick your ass when I get out" or "If I ever see you in the street I'll kill you."
>
> *Mr. Perrino:* Objection, your Honor.
>
> THE COURT: Objection sustained.
>
> *Ms. Ames:* Who said that?
>
> *Connolly:* Steve.
>
> *Mr. Perrino:* Objection.
>
> THE COURT: Sustained.
>
> *Ms. Ames:* Were you still in the jail together—
>
> *Connolly:* Yes.
>
> *Ms. Ames:*—at that time?

Defendant then moved for a mistrial based on prosecutorial misconduct. The trial justice denied the motion.

■ This Court will review the denial of a motion for a mistrial only for an abuse of discretion. *See, e.g., State v. Mason,* 528 A.2d 1259, 1260 (Me.1987) ("The trial court should deny a motion for mistrial except in the rare case when the trial cannot proceed to a fair result and no remedy short of a new trial will satisfy the interests of justice."); *State v. Marr,* 551 A.2d 456, 459 (Me.1988). Defendant argues that because "the jury was inappropriately left with the impression that the Defendant was a violent and threatening man, the court should have granted the Defendant's motion for a mistrial, or at least offered to give a curative instruction." Defendant's argument is without merit. It is not at all clear that the statement, while inflammatory, had any impact on the verdict whatever. As the State's brief points out, the jury could just as easily have interpreted defendant's threats as a response to Connolly's alleged attempt to frame him. Given the wide latitude reserved for the trial justice in this area, it cannot be said on this record that the trial justice abused his discretion.

Next, defendant argues that the trial justice committed obvious error by giving an instruction regarding exclusive possession of recently stolen property. *See* 17–A M.R.S.A. § 361(2) (1983).[2] This Court has held that the requisite "exclusive possession" may be either actual or constructive. *State v. Durgan*, 467 A.2d 165, 167 (Me.1983). "Actual possession of goods means that one has actual physical possession." *Id.* "Constructive possession means that although one does not have the actual physical custody of the goods, he has dominion, authority or control over them." *Id.* In a constructive possession case, the State "must produce evidence establishing the defendant's constructive possession as well as evidence of other possessive conduct on the part of the defendant in relation to the stolen goods." *Id.* at 167–68.

Defendant failed to object to the instruction before the jury retired; therefore, review is limited to obvious error affecting substantial rights. *See* M.R. Crim.P. 30(b) & 52(b). Under this standard, the Court will reverse only where the "instruction, viewed in the context of the charge as a whole, constitutes highly prejudicial error tending to produce manifest injustice." *State v. DeLong*, 505 A.2d 803, 806 (Me.1986). *See also State v. Quint*, 448 A.2d 1353, 1355 (Me.1982).

In the circumstances of this case, the exclusive possession instruction was warranted. The State proved constructive possession, as well as additional possessive conduct, by any combination of the following: (1) defendant's physical proximity to the scanner; (2) defendant's knowledge of the items' locations; and (3) Connolly's unrefuted testimony that all the items were on the porch prior to his arrest.

2. § 361(2) reads as follows:
   *2.* Proof that the defendant was in exclusive possession of property that had recently been taken under circumstances constituting a violation of this chapter or of chapter 27 shall give rise to a presumption that the defendant is guilty of the theft or robbery of the property, as the case may be, and proof that the theft or robbery occurred under circumstances constituting a violation of section 401 also

The entry is:

Judgment affirmed.

All concurring.

shall give rise to a presumption that the defendant in exclusive possession of property recently so taken is guilty of the burglary.